UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

GEORGE BELL, JEAN BELL, ADALBERT LUX,
BRIGITTA LUX, CHARLES VAN NEIL,
JEANNETTE VAN NEIL, PATSY PUGLIESE,
ALICE PUGLIESE, GERALD SMART,
DOROTHY SMART, HERBERT OELKERS,
RICHARD MORRILL, RUTH MORRILL,
BLAIR HENDERSHOT, and JOAN HENDERSHOT,

                                    Plaintiffs,

                                                        <u>DECISION AND ORDER</u>

                                                        13-CV-6586L

                  v.

XEROX CORPORATION,
XEROX PLAN ADMINISTRATOR COMMITTEE,
LAWRENCE M. BECKER, XEROX MEDICAL
PLAN, XEROX DENTAL CARE PLAN, and
XEROX CORPORATION 1986 ENHANCED
EARLY RETIREMENT PROGRAM,

                                    Defendants.
———————————————————————————

**INTRODUCTION**

        Fifteen plaintiffs bring this suit under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1101 *et seq.*  Defendants are Xerox Corporation ("Xerox"), three alleged

employee welfare benefit plans, and the administrators of those plans.

        The gist of plaintiff's claims is that they chose to participate in an early retirement program

offered by Xerox in the 1980s, based in part on a promise that by doing so they would receive

certain medical and dental benefits, at an unchanging level for the rest of their lives.  Plaintiffs also allege that in 2008, defendants added a reservation-of-rights clause ("RORC") to the materials provided to plaintiffs, indicating for the first time that, contrary to what plaintiffs had allegedly been promised, Xerox could modify or even terminate plaintiffs' medical and dental benefits.

Although plaintiffs' actual benefits have apparently not changed, they brought this action under ERISA, seeking to establish that defendants may not reduce their level of benefits, but must instead provide them with unchanging, unalterable, lifetime benefits.

Defendants have moved to dismiss the complaint, pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.  For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

The fifteen plaintiffs comprise eight former employees of Xerox ("employee plaintiffs") and seven of their spouses.  Plaintiffs allege that in late 1986, the employee plaintiffs were offered early retirement, apparently as part of a cost-cutting measure by Xerox.

The employee plaintiffs were told that in consideration of their opting for early retirement, they would be provided with "lifetime coverage" for themselves and their spouses, under the plan governing their medical and dental benefits as it existed prior to 1984.  Complaint ¶ 32; Complaint Ex. H (Dkt. #1-9).  Apparently that pre-1984 plan (which the parties refer to as the "Old Plan") provided a higher level of benefits than the post-1984 plan.  *See* Decl. of Lawrence Becker (Dkt. #8) ¶¶ 5-9.

Prospective early retirees were allegedly informed, during seminars presented by Xerox, that if they accepted Xerox's offer they would receive "Pre-1984 coverage," for themselves and their spouses, and that their spouses would continue to receive "lifetime coverage" in the event that the employees predeceased their spouses.  Dkt. #1-9 at 34.  Plaintiffs were also advised that if they did not elect early retirement by December 19, 1986, they would be covered by the "new" retiree health care plans, and that this was their "ONLY Opportunity" for the pre-amendment plan.[1]

The employee plaintiffs all opted for early retirement, allegedly based in part on their reliance on Xerox's representations concerning their lifetime medical and dental coverage.  The employee plaintiffs all retired from Xerox in January 1987, as required to meet the terms of the early-retirement offer.

Plaintiffs allege, however, that in October 2008, they received from defendants enrollment materials for plan year 2009, that for the first time included a RORC.   Although at this point there has been no change in plaintiffs' actual benefits, plaintiffs contend that the RORC puts their rights to unchanging benefits at risk.

Plaintiffs also allege that defendants have applied an unreasonable interpretation to certain plan language relating to the threshold at which plaintiffs' medical expenses will be covered in full. Plaintiffs allege that under the Old Plan, for employees who elected family medical coverage, 100% of eligible covered expenses would be paid as soon as the retiree and his family reached a 6% out-of-pocket maximum (based on the employee's pay in his final year) for medical expenses in any

---

[1]Plaintiffs' Exhibit H, which is allegedly a copy of certain slides that were presented to prospective early retirees, refers to coverage under the "Pre-1986 Plan."  *See* Dkt. #1-9 at 38.  Plaintiffs were told in 1986 that if they elected early retirement, they would be covered by the "medical and dental plans in effect prior to the changes announced in early 1986."  Dkt. #1-9 at 28.  Plaintiffs allege, however, that they were promised coverage at "pre-1984 levels."  Complaint ¶ 11.  It is not clear why there are these references to both pre-1984 and pre-1986 benefits, but that does not appear to be a material issue.  The ultimate question remains the same:  whether plaintiffs were told that their benefits would continue, unchanged, for the rest of their lives.

year.  *See* Dkt. #24-2 at 124 (Old Plan provision stating that the "Annual Out-of-Pocket Maximum" for health care coverage would be "6% of pre-retirement salary per member per calendar year").

Plaintiffs allege that defendants have not lived up to this promise, but have required each family *member* to reach the 6% threshold.  In other words, defendants refuse to aggregate family members' medical expenses in applying the 6% rule.  *See* Dkt. #30-1 at 9 (2009 enrollment bulletin provision stating that out-of-pocket maximum would be "6% of pre-retirement salary, *per covered person* per calendar year") (emphasis added).

In addition, plaintiffs allege that they have requested that defendants provide them with certain documents concerning their benefits, and that defendants have not done so.  Plaintiffs allege that defendants' response to their requests have been incomplete at best, and misleading at worst.

Based on these allegations, plaintiffs have brought this lawsuit against Xerox, the Xerox Plan Administrator Committee ("Committee"), Lawrence Becker (who is identified as the chairman of the Committee), the Xerox Medical Plan, the Xerox Dental Care Plan, and the Xerox Corp. 1986 Enhanced Early Retirement Program ("ERP").

Plaintiffs assert four causes of action:  (1) for a clarification of their right to future benefits under § 1132(a)(1)(B); (2) for enforcement of their right to benefits under § 1132(a)(1)(B), regarding the 6% out-of-pocket maximum; (3) a claim of promissory estoppel, to bar defendants from inserting a RORC into the terms of the plans; and (4) a claim against the Committee and Becker under § 1132(c), which permits the recovery of civil penalties against a plan administrator for failing to furnish, upon written request by a participant or beneficiary, certain types of plan-related documents.  *See Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 706-07 (6th Cir. 2014). Defendants have moved to dismiss the complaint, pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure.

Defendants have moved to dismiss the complaint, on several grounds.  Defendants contend that plaintiffs lack standing to sue, because they have not been denied benefits, nor have their benefits been reduced.  They further contend that plaintiffs' claims under § 1132(a)(1)(B) is time-barred, that the ERP is not an ERISA-covered plan, and that defendants never promised plaintiffs unchanging, lifetime benefits.  Defendants raise several other arguments in support of their motion, which will be addressed below.

## DISCUSSION

### I. Standing

Defendants contend that, as to their first cause of action for clarification of their right to future benefits, plaintiffs lack standing to sue, on the ground that the mere incorporation of a RORC into a welfare benefits plan does not give rise to an actual controversy.  Defendants argue that the allegations of the complaint show that defendants have not reduced plaintiffs' benefits, and that there is no actual controversy before the Court.

Article III, Section 2, of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies."  As part of this limitation, parties seeking to bring suit in federal court must establish standing under Article III to assert their claims.  *See E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, ___, 2014 WL 3377162, at *5 (2d Cir. 2014).  In general, that means that the plaintiffs must allege facts showing that they have suffered an "injury in fact" caused by the defendants' conduct, that can be redressed by a decision favorable to the plaintiffs.  *Id.*

As the Second Circuit has noted, "the courts of appeals have generally recognized that threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes."  *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003).  While the

court in *Baur* (which involved an alleged risk of contracting a fatal disease) stopped short of holding that enhanced risk generally qualifies as an "injury" sufficient to confer standing, the court cited, in support of its observation about the state of the law, the Seventh Circuit's decision in *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 888 (7th Cir. 2001). In *Johnson*, the court held that the "increased risk that a plan participant faces" as a result of an ERISA plan administrator's increase in discretionary authority satisfies Article III injury-in-fact requirements. *See Baur*, 352 F.3d at 633 (citing *Johnson*, 259 F.3d at 888).

The court in *Johnson* explained that "[a]n increased amount of discretion opens up to the administrator administering the plan a greater range of permissible choices. This expanded range renders 'less solid' the participant's benefits by shifting risk to the participant. The increased risk the participant faces as a result is an injury-in-fact." 259 F.3d at 888. *See also Pisciotta v. Old National Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) ("As many of our sister circuits have noted, the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions") (citing cases).

Applying those principles here, I conclude that plaintiffs' allegation that in October 2008, defendants, for the first time, added language in plaintiffs' annual enrollment materials containing a RORC is sufficient to confer standing on the plaintiffs, as to their claim for clarification of their right to future benefits. By its very nature, a claim for clarification of future benefits presumes that the plaintiff is not currently being denied benefits to which he claims he is entitled. Thus, the fact that plaintiffs' benefits have not yet been reduced does not mean that they lack standing to assert this claim. That is not to say that plaintiffs' claims have merit, but at the very least, plaintiffs have

alleged enough to show that an actual case or controversy exists between them and defendants, sufficient to confer standing on plaintiffs.

## II. Limitations Period

## A. Parties' Arguments

Defendants contend that plaintiffs' claims under § 1132(a)(1)(B) are time-barred. Plaintiffs have asserted two claims under § 1132(a)(1)(B): their first cause of action, for clarification of their right to future benefits, and their second cause of action, for enforcement of their right to benefits, in connection with plaintiffs' claims relating to the 6% out-of-pocket maximum regarding plaintiffs' medical expenses, before those medical expenses will be covered in full.

Defendants assert that plaintiffs' claims are governed by a contractual one-year limitations period, and that the limitations period began to run no later than 2008, when the RORC was added to the Xerox Medical Plan. *See* Dkt. #7 at 25. An assessment of this argument, then, requires an understanding of two separate issues: the length of the limitations period, and the commencement date of that period.

ERISA itself sets forth no limitations period on claims under § 1132(a)(1)(B). As a general rule, such claims are subject to the most analogous state statute of limitations. *See Testa v. Becker*, 979 F.Supp.2d 379, 382 (W.D.N.Y. 2013) (citing *Guilbert v. Gardner*, 480 F.3d 140, 148-49 (2d Cir. 2007)). In New York, courts typically apply the six-year limitations period for contract actions set forth in N.Y. C.P.L.R. § 213. *Id.*

Courts have also recognized, however, that a participant and a plan may agree by contract to a particular limitations period, as long as the period is reasonable. *Heimeshoff v. Hartford Life &*

*Acc. Ins. Co.*, __ U.S. __, 134 S.Ct. 604, 611 (2013); *see also Burke v. PriceWater House Coopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) ("New York permits contracting parties to shorten a limitations period ... if the agreement is memorialized in writing") (citing C.P.L.R. § 201). *See also Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 621 (6th Cir. 2013) (contractual limitations periods are generally enforced irrespective of state law so long as they are reasonable), *cert. denied*, __ U.S. __, 134 S.Ct. 1024 (2014).

Whichever period applies–statutory or contractual–such claims generally accrue "when a plan clearly and unequivocally repudiates the plaintiff's claim for benefits and that repudiation is known, or should be known, to the plaintiff." *Carey v. International Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 50 (2d Cir. 1999). That rule applies "regardless of whether the plaintiff has filed a formal application for benefits." *Id.* at 49. *See, e.g.*, *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents*, 285 Fed.Appx. 802, 804 (2d Cir. 2008) (distribution of plan summary "constituted a clear repudiation of any pre-amendment benefits that plaintiffs could possibly claim"). *See also Holland v. Becker*, No. 08-CV-6171, 2013 WL 5786590, at *4 (W.D.N.Y. Oct. 28, 2013) ("what triggers the limitations period is not the conclusion of a formal administrative process, but the administrator's clear repudiation of the plan participant's claim to the benefits at issue").[2]

The one-year limitations period relied on by defendants in this case was apparently first set forth in a plan amendment dated September 7, 2004. The amendment stated:

A new Section 6.10 shall be added to read in its entirety as follows:

---

[2]A plan can validly prescribe a limitations period that begins to run before the claim accrues, as long as the period itself is reasonable. For example, the plan may provide that the limitations period runs from the deadline for filing proof of loss, even though strictly speaking an ERISA claim will not accrue until later, when the participant's administrative claim is finally denied. *See Heimeshoff*, __ U.S. __, 134 S.Ct. at 610; *DeMarco v. Hartford Life and Acc. Ins. Co.*, No. 12 Civ. 4313, 2014 WL 3490481, at *5 (E.D.N.Y. July 11, 2014). That does not appear to present an issue in this case, however.

> "Section 6.10.   Limitations of Actions.   Any action brought in state or federal court for the alleged wrongful denial of Plan benefits or for intentional interference with any Plan rights to which any person is or may become entitled under ERISA must be commenced within one year after the cause of action accrued."

Dkt. #29 at 26.  Defendants contend that, accepting the truth of all of plaintiffs' factual allegations, this one-year period began to run no later than 2008, when plaintiffs were first notified of Xerox's insertion of the RORC.

In response to defendants' motion, plaintiffs contend that the one-year limitations period does not apply to their claims, because it was not contained in the 1986 ERP documents that were provided to plaintiffs.  Plaintiffs reiterate their position that the terms of the ERP were not subject to amendment; therefore, their argument goes, defendants' attempted insertion of a one-year limitations period in 2004 was ineffective as to plaintiffs.

Plaintiffs also note that when, in August 2012, defendants first denied plaintiffs' request for relief, including plaintiffs' demand that Xerox "exempt the Participants from any and all reservations of rights clauses appearing in any plan documents and definitively state that such reservations of rights clauses do not apply to the Participants," *see* Dkt. #1-9 at 2, defendants did not contend that plaintiffs' request was untimely.  Instead, Xerox simply stated that it "reserve[d] the right to make changes to the Old Plan to meet business and/or legal requirements."  *See* Dkt. #1-9 at 10.[3]   The amendment adding the one-year limitations period is dated September 7, 2004.  Dkt. #29 at 26.  Plaintiffs do not contend, however, that they did not receive notice of that amendment.

**B. Discussion**

---

[3]There does not appear to be any issue concerning whether plaintiffs were made aware of the insertion of this limitations period into the Plan.  Defendants' Exhibit K, which is a copy of plaintiff George Bell's administrative challenge to defendants' treatment of certain Medicare reimbursements, references the 2003 Restatement of the Plan. *See* Dkt. #19 at 11.  He signed that document on January 13, 2006.  Dkt. #19 at 5.

On its face, the one-year contractual limitations period does not apply to plaintiffs' first cause of action.  By its terms, the contractual limitations  period applies only to claims "for the alleged wrongful denial of Plan benefits or for intentional interference with any Plan rights to which any person is or may become entitled under ERISA ... ."

Plaintiffs' first cause of action, which is brought under § 1132(a)(1)(B), does not allege they have been denied benefits, nor does it allege interference with their ERISA rights (a claim that would typically be brought under 29 U.S.C. § 1140, *see, e.g.*, *Schultz v. Tribune ND, Inc.*, 754 F.Supp.2d 550, 560-61 (E.D.N.Y. 2010)).  The first cause of action seeks only clarification of plaintiff's *future* right to benefits.  Thus, the contractual limitations period, on its face, does not apply to plaintiffs' first cause of action.

Defendants certainly could have written the limitations provision more broadly, to include any and all claims arising under or relating to the plans.  Instead, the applicability of the limitations period is limited to a particular class of claims, comprising claims for the denial of, or intentional interference with plan benefits.  Claims for clarification of a future right to benefits are simply not included within that category.  To the extent that any ambiguity exists in that regard, such ambiguity must be construed against defendants.  *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008).

Plaintiffs' second cause of action alleges that "[d]efendants have refused to honor their obligation to pay for 100% of all eligible covered medical expenses once a plaintiff's family has reached the 6% out-of-pocket maximum when one or both members of the family are eligible for Medicare."  Dkt. #1 at 23 ¶ 83.  For relief, plaintiffs ask that "the terms of plaintiffs' medical benefits be enforced to provide that the 6% aggregate out-of-pocket maximum continue as promised for plaintiffs who elected family coverage, even when one or both members of the family are

eligible for Medicare ... ."  Dkt. #1 at 31.  The complaint does not appear to allege that any plaintiffs have actually been denied benefits as a result of this change.

It is not immediately clear, then, whether this cause of action falls within the terms of the contractual one-year limitations period for claims of "alleged wrongful denial of Plan benefits or for intentional interference with any Plan rights."  On  the second cause of action, the complaint seeks a judgment directing "that the terms of plaintiffs' medical benefits be enforced to provide that the 6%" out-of-pocket maximum be applied in the aggregate, rather than applied separately to each family member.  Dkt. #1 at 31.  Thus, the second cause of action does not clearly seek benefits as such, but rather equitable relief, *i.e.*, enforcement of the terms of the plan, as interpreted by plaintiffs.  As stated, any ambiguity in that regard must be construed against the defendants.  *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) ("Ambiguities are construed in favor of the plan beneficiary"); *Clark v. Nationwide Mut. Ins. Co.*, 933 F.Supp. 862, 874 (S.D.W.Va. 2013) (finding that plan's limitations provisions were ambiguous and should be construed to allow for longer period).

Plaintiffs are also correct that Xerox did not raise the contractual limitations issue in its initial denial of plaintiffs' administrative claim.  In a letter to Becker dated August 28, 2012, plaintiffs' counsel set forth plaintiffs' "demand that Xerox honor fully the terms and conditions of the ERP and comply with its statutory obligations to the Participants under [ERISA] with regard to the administration of the ERP."  That included a demand that "Xerox ... exempt the Participants from any and all reservations of rights clauses appearing in any plan documents and definitively state that such reservations of rights clauses do not apply to the Participants ... ."  *Id.*

Becker responded by letter dated September 25, 2012, essentially denying all of plaintiffs' requests.  Becker stated, *inter alia*, that "we do not waive any legal argument that we may have,

including that such claim [for enforcement of the terms of the Old Plan] is untimely." Dkt. #1-9 at

10.   Becker advised plaintiffs' counsel that plaintiffs had the right to administratively appeal, and

that "[i]n the event there is an adverse determination on appeal, you will have the right under

ERISA to bring a civil action, subject to any valid defenses that Xerox and the Old Plan may have,

including the statute of limitations," but he did not explicitly state what the limitations period was.

Dkt. #1-9 at 11.

Not until plaintiffs' administrative appeal was denied in March 2013 did defendants

expressly advise them of Xerox's contention that a one-year limitations period applied to their

claims.   In that denial letter (in which Xerox essentially denied that there was any such thing as an

"Enhanced Retirement Plan"), Becker states, "You have the right under ERISA to bring a civil

action, subject to any valid defenses that Xerox and the Old Plan may have, including the statute of

limitations.   Any action may be brought only in Federal District Court in Monroe County, New

York, and must be commenced within one year after the cause of action accrued." Dkt. # 1-9 at 25-

26.[4]   Becker did not state when, in Xerox's view, any of plaintiff's claims had accrued.[5]

In opposition to defendants' motion here, plaintiffs rely on *Novick v. Metropolitan Life Ins.*

*Co.*, 764 F.Supp.2d 653 (S.D.N.Y. 2011), in which the court denied a plan administrator's motion to

dismiss an ERISA claim as untimely.   The court in *Novick* held that the plan administrator's "*initial*

benefits termination letter violated the ERISA regulations by failing to include the applicable time

limit for bringing a civil action pursuant to Section 1132(a) after an adverse benefits decision on

---

[4]Curiously, both the initial denial letter (Complaint Ex. B) and the administrative appeal decision (Complaint Ex. D) were authored by Becker.   On the face of it, then, it appears that Becker decided both the initial request and the administrative appeal, in effect affirming his own decision.

[5]Although, as explained below, I find that a six-year limitations period applies here, I note that plaintiffs did commence this action within one year of defendants' denial of their administrative appeal, on October 29, 2013.

appeal.  Because of that violation, New York's six-year statute of limitations governed the action and Novick's claim ... is timely." *Id.* at 660 (emphasis in original).

After analyzing the ERISA statute, regulations, relevant case law, and secondary source material, the *Novick* court concluded that because "Metlife's letter initially terminating Novick's STD [short term disability] benefits claim did not state the limitations period applicable for any civil action she might eventually bring challenging that determination, ... Metlife ... violated the Department of Labor's regulations governing ERISA, 29 C.F.R. § 2560.503-1(g)(1)(iv)," and that "the appropriate result is to disregard the Plan's six-month limitations period and instead apply New York's six-year contract statute of limitations." *Id.* at 664.  The court went on to hold that "[b]ecause Metlife's letter terminating Novick's STD benefits violated ERISA regulations, the letter following Metlife's affirmation of that termination on appeal did not operate to start the post-appeal six-month limitations period." *Id.*  Applying New York's six-year contractual statute of limitations, the court held that since the plaintiff's claim was brought "just eighteen months after ... her appeal was denied, Novick's claim for STD benefits is timely."

Unlike the instant case, in *Novick* both the initial denial letter and the letter denying the plaintiff's appeal did not mention any time limits applicable to any civil action.  *See id.* at 658.  Nevertheless, as is made evident above, the court clearly held that defendants' failure to include notice of the limitations period in the *initial* denial letter was itself enough to warrant disregarding the plan's contractual limitations period.  *See also Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 680 (1st Cir. 2011) ("Orthobiologics was required by federal regulation to provide Ortega with notice of his right to bring suit under ERISA, and the time frame for doing so, when it denied his request for benefits") (citing 29 C.F.R. § 2560.503–1(g)(1)(iv)).

13

This result also finds support in the recent decision of the Sixth Circuit in *Moyer v. Metropolitan Life Ins. Co.,* ___ F.3d ___, 2014 WL 3866073 (6th Cir. Aug. 7, 2014).  The court in *Moyer* held that when the plan administrator sent the plaintiff a letter notifying him that his disability benefits were being revoked, the administrator "was required to include the time limit for judicial review."  *Id.* at *2.  The court stated that the defendant's "failure to include the judicial review time limits in the adverse benefit determination letter renders the letter not in substantial compliance with [29 U.S.C.] § 1133," which, along with its accompanying regulations, sets forth the requirements for adverse benefit determination letters.  *Id.* at 3.  The court held that "[t]he appropriate remedy is to remand to the district court [which had dismissed the complaint as untimely] so that Moyer may now receive judicial review."  *Id.* at *4.  *See also Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003) ("A written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect her claim, including the time limits applicable to administrative review.  A notice that fails to substantially comply with these requirements does not trigger a time bar contained within the plan") (citation omitted).

In addition, the limitations issue is intertwined with the ultimate issue in this case, concerning the extent to which defendants can lawfully limit plaintiffs' benefits under the Old Plan.  The one-year limitations period was added to the Old Plan in 2004 by means of an amendment to the 2003 Restatement of the Old Plan.

While that might seem unremarkable in itself, it is important to consider that in 2005, Xerox sent a letter to all Old Plan retirees, informing them that their Medicare Part B reimbursements

would be frozen at their 2005 level.  In other words, the participants would have to absorb any future increases in Medicare Part B payments.  *See* Dkt. #24-7 at 45.

Plaintiff Bell successfully challenged that decision.  In a letter to Xerox dated November 19, 2005, he stated, "I do not agree to absorb increases in Medicare Part B premiums."  Bell expressly relied on what he described as "Xerox's lifetime guarantees" for "specific benefits," which he stated was "a contract and cannot be changed."  Dkt. #24-7 at 47.  Treating Bell's letter as a request for reimbursement for costs above the Medicare Part B cap, Xerox initially denied Bell's request, stating that § 7.1 of the Plan made clear that Xerox reserved the right to amend, suspend or terminate the Plan at any time and for any reason.  Dkt. # 24-7 at 49.

Bell administratively appealed that decision, stating that he "counted on ... lifetime medical and dental coverage ... ."  Dkt. #24-7 at 51.  Bell also asserted that "[t]he combination of clear and express vesting language in the Enhanced Retirement Program and the absence of reservation of rights in the original medical and dental plans create an extraordinary class of retirees."  *Id.* at 52.

In March 2006, Becker informed Bell that his "appeal [wa]s granted."  The letter informed Bell of the amount of his benefits, but contained no explanation of why the appeal had been granted.  Dkt. #24-7 at 62.  In a letter to all Old Plan retirees dated March 13, 2006, Becker stated, "we have reconsidered our decision on Medicare Part B premium reimbursement."  Otherwise, the letter was mostly identical to the one sent to Becker.  *Id.* at 64.  Becker said nothing about whether Xerox still purported to reserve its rights to amend the Old Plan as to the participants who had opted for early retirement.

While the express terms of defendants' missives were limited in scope, the final result could reasonably have been interpreted as endorsing Bell's assertion that plaintiffs were "an extraordinary

class of retirees," and that defendants had not reserved any right to change the terms of the Old Plan as to them.   In other words, plaintiffs might reasonably have interpreted defendants' granting of Bell's appeal as implicitly accepting Bell's assertion that the terms of the Old Plan, including its limitations period (or more accurately, the absence of any contractual limitations period in the Old Plan at the time that plaintiffs accepted Xerox's early-retirement offer) could not substantively be changed as to plaintiffs.

In granting Bell's appeal, with no explanation of their reasons for doing so, defendants left it ambiguous whether they agreed with the basis for Bell's appeal.   But again, to the extent that defendants created any ambiguity in that regard, that ambiguity must be resolved in plaintiffs' favor. *See Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 181 (2d Cir.), *cert. denied*, __ U.S. __, 134 S.Ct. 241 (2013).   *See also Heimeshoff v. Hartford Life & Accident Ins. Co.*, __ U.S. __, 134 S.Ct. 604, 615 (2013) ("If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense").

I conclude, therefore, that New York's six-year limitations period for contract actions applies to plaintiffs' claims.   I also find that plaintiffs' claims did not accrue, at the earliest, until 2008, when defendants purported to add a RORC to the Old Plan.   This action, which was commenced in 2013, is therefore timely.[6]

---

[6]I also note that defendants argue that "[e]ven generously assuming that Plaintiffs' claim did not accrue until 2008 when they received notification of the incorporation of the reservation of rights provision," plaintiffs had only one year from then to commence an action.   While I recognize that parties may argue in the alternative, that assertion is inconsistent with defendants' contention that plaintiffs lack standing.   Defendants' arguments would put participants in a bind:  either sue within a year after an objectionable plan provision is adopted, and face dismissal for lack of standing, or wait until a claim for benefits is denied, and be met with an untimeliness challenge.

### III. "ERISA Covered Plan"

Defendants next argue that the 1986 ERP is not an ERISA-covered plan, and that it therefore is not a proper defendant. Noting that ERISA sets forth specific requirements that must be met before a plan will be found to exist, defendants contend that plaintiffs' allegation that Xerox created a separate plan by offering an early-retirement option is not supported by the law or facts.

"A finding that a particular program is a 'plan' under ERISA depends in part upon whether that program 'requires an ongoing administrative program to meet the employer's obligation.'" *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 737 (2d Cir. 2001) (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987)). While no one factor is determinative, in deciding whether an ERISA plan exists, courts generally look at (1) whether the employer's undertaking requires managerial discretion, (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits, and (3) whether the employer was required to analyze the circumstances of each employee's circumstances separately in light of certain criteria. *See id.*

I find that plaintiffs have sufficiently alleged facts showing that the ERP constitutes an ERISA plan. Defendants did not agree simply to provide a one-time payment, but promised "pre-1984 coverage" and "lifetime coverage for retiree and spouse." Dkt. #1-9 at 34. That certainly suggested an "ongoing commitment" to provide benefits under the terms of the pre-1984 plan. *See New England Mut. Life Ins. Co. v. Baig*, 166 F.3d 1, 4 (1st Cir. 1999) ("whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits is an important consideration" in determining whether a plan exists) (internal quote omitted).

In addition, the underlying pre-1984 Old Plan is unquestionably an ERISA plan.  The same factors that demonstrate its status as a plan apply to plaintiffs' assertion that the ERP constitutes an ERISA plan, with the added wrinkle that defendants allegedly promised plaintiffs that their benefits under the ERP would never change.  *See Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 565-68 (2d Cir. 1998) (affirming district court's holding that severance-pay program was an ERISA plan, based on factors that indicated "an 'ongoing,' though not necessarily limitless, commitment to pay benefits").  Defendants' motion to dismiss plaintiffs' claims against ERP is therefore denied.

## IV. Claim for Clarification of Benefits

Defendants contend that plaintiffs' first cause of action, for clarification of their right to benefits under § 1132(a)(1)(B), should be dismissed as implausible, under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Defendants assert that plaintiffs have not pointed to any language supporting a claimed promise of unchanging lifetime benefits.  Furthermore, defendants argue, Xerox has always had the right to reduce plaintiffs' benefits, since the Old Plan has always been subject to amendment at any time.

As stated, however, plaintiffs have submitted evidence that they were assured of "[l]ifetime coverage for retiree and spouse," under the "pre-1984" plan.  That could reasonably have been interpreted as a promise that plaintiffs' benefits were *not* subject to change.  A promise of pre-1984, "lifetime" coverage would be a hollow one indeed if it were subject to amendment or termination at any time, at the administrator's whim.  It is difficult to see how such an offer–stating,

18

in effect, "we will provide you and your spouse with lifetime benefits under the pre-1984 plan, unless we decide not to"–would have been enticing at all.

I recognize that under ERISA, employee welfare benefit plans are, generally speaking, subject to amendment or termination.  But employers can limit that right by contract.  *See Aleo v. KeySpan Corp.*, No. 05-CV-4490, 2006 WL 2265306, at *3 (E.D.N.Y. Aug. 7, 2006) (citing *Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F.3d 90, 97 (2d Cir. 2001)).  "To support a claim that a promise of lifetime health or welfare benefits is contractually vested, a plaintiff must point to 'specific written language that is reasonably susceptible to interpretation as a promise to vest the benefits.'"  *Id.* (quoting *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 60 (2d Cir. 2006)).  Plaintiffs have done so here.

Defendants' reliance on *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 857 (4th Cir. 1994), is misplaced.  In *Gable*, the subject plan had consistently contained a RORC, and the participants had been informed of such.  *See id.* at 854.  Furthermore, while certain forms issued to retiring employees did refer to "lifetime" benefits, there were no allegations in *Gable* that the plaintiffs had been induced to retire at a particular age, or under particular conditions, in reliance on a promise of lifetime benefits.

The court in *Gable* recognized that "[a]n employer may waive its statutory right to modify or terminate benefits ... by voluntarily undertaking an obligation to provide vested, unalterable benefits," *id.* at 855 (internal quotes and alteration omitted).  But since the plan documents, which had been provided to the plaintiffs, had always "unambiguously reserved the company's right to modify or terminate the plan," the court found no need to consider the plaintiffs' extrinsic evidence in support of their claim to unchanging lifetime benefits.  *Id.* at 857.

19

That stands in contrast to the situation here.  When plaintiffs accepted Xerox's offer of early retirement, the Old Plan did not contain a RORC.  Plaintiffs also allege that they were specifically told that they would be covered under the plan as it existed prior to 1984.  Defendants' later granting of Bell's appeal could also reasonably have been interpreted as confirming his allegation that "Xerox's lifetime guarantees" for "specific benefits" amounted to "a contract and cannot be changed."

I conclude, therefore, that plaintiffs' claim for clarification of their benefits has been adequately pleaded and may proceed, at least at this stage.  Defendants' motion to dismiss the first cause of action is therefore denied.

## V. "Out-of-Pocket Maximum" Claim

In their second claim, plaintiffs allege that the terms of their benefits provided that 100% of eligible covered expenses would be paid as soon as the retiree and his spouse reached a 6% out-of-pocket maximum (based on the employee's pay in his final year of employment) for medical expenses in any year.  Plaintiffs allege that defendants have not lived up to that promise, but have begun requiring each family member to reach the 6% threshold before expenses will be 100% covered.  Defendants seek to dismiss this claim, alleging that the Old Plan has consistently been interpreted as applying the 6% maximum on a per-person, not a per-family basis.

Plaintiffs allege that when they were offered early retirement, they were provided a handbook entitled "The Xerox Medical and Dental Plans for Retired Employees."  *See* Complaint

20

¶ 53; Bell Decl. (Dkt. #24-6) ¶ 7; Dkt. #24-7 at 4.  In effect, this was a summary plan description ("SPD") for the relevant plans.[7]

The SPD included a section entitled "The Xerox Medical Plan for Retirees Eligible for Medicare (at Age 65)," *id.* at 16.  That section provided that the plan would cover 80% of certain medical expenses.  Under the heading "6% Limitation," however, the booklet stated that "[w]hen the combination of deductible and the 20% coinsurance payment by the subscriber and family equals the 6% limitation value determined by Xerox [which was based on the retiree's "salary in effect on the last day worked"], any additional covered services paid under Xerox Major Medical and rendered during the remainder of the calendar year will be paid at 100% rather than 80%." *Id.* at 19.

Plaintiffs contend that defendants have effectively applied a 12% out-of-pocket maximum, by requiring both the employee and the employee's spouse to reach the 6% threshold in a calendar year before 100% of medical expenses will be covered.  Defendants respond that this provision has consistently been interpreted as requiring both individuals to reach the 6% threshold, and that this interpretation is fully consistent with the terms of the plans.

The first question that must be addressed here is what standard of review to apply. Defendants contend that the Court should apply a deferential standard of review because the Old Plan, as restated in 2003, expressly grants the administrator discretion to construe and interpret its provisions.  *See* Dkt. #14 at 13, § 6.5(b)(1).  Plaintiffs contend that the Court should apply a *de novo* standard of review.

---

[7]A copy of this same document has been filed by defendants as Exhibit C to Becker's declaration.  Dkt. #11. Becker describes it as the 1984 SPD.  *See* Dkt. #8 ¶ 7.

Once again, this implicates issues concerning which version of the plan controls.  It appears that at the time plaintiffs accepted Xerox's offer of early retirement, neither the plan itself nor the plan summary contained any discretion-granting language.  *See* Becker Decl. Ex. A (Dkt. #9).  Only in the 2003 Restatement did Xerox add such language to the Old Plan.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion.  *See id.* at 115 ("a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan").  "When an ERISA plan explicitly vests its administrator with discretion to interpret the plan, federal courts may ordinarily overturn the administrator's benefits determination only upon a finding that the determination is arbitrary and capricious."  *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009).

In general, "courts have drawn a distinction between procedural amendments regarding claims administration and amendments regarding a claimant's substantive eligibility for, or entitlement to, benefits.  Courts have held that a plan amendment that only alters a procedural or administrative aspect of a benefit determination does not affect a claimant's benefits, and therefore may be retroactively applied."  *Williams v. Target Corp.*, No. 12-cv-11775, 2013 WL 5372877, at *8 (E.D.Mich. Sept. 25, 2013) (citations omitted), *vacated on other grounds and remanded*, __ Fed.Appx. __, 2014 WL 4375989 (6th Cir. 2014).  *See*, *e.g.*, *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003) ("Since the employer can change the plan, then it must follow that the controlling plan will be the plan that is in effect at the time a claim for

benefits accrues"); *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc.*, 298 F.3d 191, 196 (3d Cir. 2002) ("As the issue involved here is the administrator's discretionary authority to make the benefits determination, we conclude that the better approach is to look at the plan in effect on the date the administrator actually made that determination").  *See also Lijoi v. Continental Cas. Co.*, 414 F.Supp.2d 228, 238 (E.D.N.Y. 2006) (applying *de novo* standard where, even though administrator was granted discretionary authority by amendment of plan after the initial appeal determination, and administrator issued letter subsequent to plan amendment reiterating its prior decision, administrator made no additional findings in support of its second determination); *High v. E-Systems, Inc.*, No. 02-CV-2100, 2005 WL 323728, at *4 (N.D.Tex. Feb. 8, 2005) ("A procedural amendment to an ERISA plan, including an amendment changing the scope of an administrator's discretion and authority, applies to a claims determination made after the effective date of the amendment, regardless of when the claim arose"), *aff'd*, 459 F.3d 573 (5th Cir. 2006).

I conclude that the administrator's decision here should be reviewed under an arbitrary-and-capricious standard.  Even assuming *arguendo* that plaintiffs were promised that their benefits would continue unchanged for life, the amendment of the Old Plan giving the administrator discretion to construe its terms was more procedural than substantive.  Plaintiffs do not appear to contend that Xerox was barred from making *any* changes relative to the Old Plan, nor would such as assertion be tenable.

Nevertheless, I conclude that even under an arbitrary-and-capricious standard of review, the administrator's decision cannot be sustained.  The plain language of the SPD simply does not bear the interpretation given to it by defendants.

It is worth repeating in full the relevant language of this provision:

**6% Limitation**

Xerox will determine the 6% limitation value–6% of the annual rate of pay.  In the case of a disabled employee or retiree, salary in effect on the last day worked will be used.

When the combination of deductible and the 20% coinsurance payment by the subscriber and family equals the 6% limitation value determined by Xerox, any additional covered services paid under Xerox Major Medical and rendered during the remainder of the calendar year will be paid at 100% rather than 80%.

Dkt. #24-7 at 19.

The operative language is "[w]hen the combination of deductible and the 20% coinsurance payment by the subscriber and family equals the 6% limitation value determined by Xerox ... ."  On its face, that refers to the payments "by the subscriber *and* [his or her] family" reaching the 6% threshold.  There is nothing whatsoever in that provision to suggest that the 6% maximum will be applied on a per-person basis.  The only reasonable interpretation of that language is that the out-of-pocket maximum is based on the combined expenses of the participant and his spouse and other family members.

Defendants' contention that "the Old Plan has consistently been administered, the 6 percent out-of-pocket maximum requirement has been interpretated [sic] as a requirement to be satisfied on a per person basis," Def. Mem. (Dkt. #7) at 27, is no reason to dismiss this claim under Rule 12(b)(6).  An unreasonable plan interpretation does not become reasonable merely by being applied consistently.  Defendants' motion to dismiss the second cause of action is therefore denied.

## VI. Whether Xerox Is a Proper Party

Defendants contend that plaintiffs' claims under § 1132(a)(1)(B) must be dismissed as to Xerox, because Xerox is not a proper party on such a claim.  Defendants cite authority that a "claim for recovery of benefits under ERISA § 501(a)(1)(B) can be brought only against a covered plan, its

administrators, or its trustees." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 108 n.2 (2d Cir. 2008).  *See also Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (dismissing employer from § 502(a)(1)(B) suit "[b]ecause it is clear from the Plan documents that [the employer] was neither the designated Plan administrator nor a Plan trustee"); *Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 574 (W.D.N.Y.1999) (holding that employer was not a proper party because only the plan and the administrators and trustees of the plan in their capacity as such may be held liable under § 502(a)(1)(B)).

In response, plaintiffs do not dispute defendants' assertion that Xerox is not a proper defendant as to plaintiffs' first two causes of action, both of which are brought under § 1132(a)(1)(B), but plaintiffs maintain that Xerox is still a proper party as to their third claim, for promissory estoppel.  Defendants contend that the third claim should be dismissed in its entirety, for other reasons, but they do not contend that Xerox is an improper defendant on that claim.

Accordingly, plaintiffs' first and second causes of action are dismissed as to Xerox Corporation.  Plaintiffs' third cause of action is addressed below.

## VII. Promissory Estoppel

Plaintiffs' third cause of action asserts that defendants should be "estopped from attempting to incorporate a reservation of rights clause into the terms governing the provision of medical and dental benefits to plaintiffs under the 1986 ERP, and are estopped from increasing the out-of-pocket maximum for those plaintiffs who elected family medical coverage once one or both family members become eligible for Medicare."  Complaint ¶ 97.  Defendants contend that plaintiffs have failed to state a viable claim for promissory estoppel.

"Promissory or equitable estoppel is available on ERISA claims only in 'extraordinary circumstances.'" *Paneccasio*, 532 F.3d at 109 (quoting *Devlin v. Transp. Communications Int'l Union*, 173 F.3d 94, 101 (2d Cir.1999)).  To prevail on an estoppel claim under ERISA, plaintiffs must prove "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced," and they must "adduce [ ] ... facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well." *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (internal quotation marks omitted) (alterations in original).

In support of their motion, defendants again assert that they never made any promise of unchanging, lifetime benefits.  The Second Circuit has made clear, however, that this can present an issue of fact.  *See Devlin*, 173 F.3d at 86-87 (finding that an issue of fact existed as to whether employer's alleged promise of lifetime life insurance benefits, and its later denial of those benefits, constituted "extraordinary circumstances" sufficient to support plaintiffs' promissory estoppel claim); *Abbruscato*, 274 F.3d at 101 (remanding claim to district court, where plaintiffs had sufficiently demonstrated the four basic elements of promissory estoppel, plus "extraordinary circumstances" to avoid summary judgment).

As explained above, with respect to plaintiffs' claim for clarification of their benefits, plaintiffs have alleged that they were presented with language that could reasonably have been interpreted as a promise that plaintiffs' benefits were *not* subject to change.  Whether the evidence will ultimately support this claim, including the element of "extraordinary circumstances," remains to be seen, but at this stage I find that these allegations are sufficient to make out a claim of promissory estoppel.  *See Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 80 (2d Cir. 1996) (defendants' use of promised severance benefits to persuade plaintiff to retire was sufficient to

constitute extraordinary circumstances and thus created a material issue of fact); *Cerasoli v. Xomed, Inc.*, 972 F.Supp. 175, 180 (W.D.N.Y. 1997) ("whether the circumstances of this case were truly extraordinary cannot be determined at this early stage of the case").

Defendants also contend that to the extent that plaintiffs attempt to assert a promissory-estoppel claim under state law, such a claim is preempted by ERISA. Plaintiffs do not appear to dispute that assertion, and I agree that plaintiffs cannot assert a claim for promissory estoppel under state law. *See Colon v. Guthrie Clinic, Ltd.*, No. 06-CV-6527, 2008 WL 686268, at *2 (W.D.N.Y. Mar. 7, 2008) ("As a matter of law all state common law claims of promissory estoppel, breach of contract, or fraud are preempted by ERISA") (quoting *Snyder v. Elliot W. Dann Co.*, 854 F.Supp. 264, 273 (S.D.N.Y. 1994)); *Billinger v. Bell Atlantic*, 240 F.Supp.2d 274, 286 (S.D.N.Y. 2003) (plaintiff's state law claims [of promissory estoppel and breach of contract] plainly relate to an ERISA-governed plan ... Therefore, all of these claims are preempted and must be dismissed"), *aff'd*, 124 Fed.Appx. 669 (2d Cir. 2005).

## VIII. Claim for Statutory Damages under § 1132(c)

In their fourth claim, plaintiffs allege that they asked the Xerox Plan Administrator Committee and Becker to provide them with certain information about their benefits, and that defendants gave them only "various irrelevant documents of undocumented origin ... ." Complaint ¶ 104. Under 29 U.S.C. § 1132(c)(1), a plan administrator who fails to supply certain documents requested by a plan participant or beneficiary within thirty days of the request may "be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure." 29 U.S.C. § 1132(c)(1).

"In assessing a claim for statutory penalties under ERISA, a district court should consider various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.'" *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 848 (2d Cir. 2013) (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 90 (2d Cir. 2001)) (additional quotes omitted). *See*, *e.g.*, *id.* (concluding that district court did not abuse its discretion when it held that the plaintiff was not entitled to statutory penalties, where plaintiff presented no evidence of bad faith or intentional misconduct by defendants, and failed to demonstrate prejudice).

In the case at bar, defendants contend that the documents attached to the complaint show that defendants provided plaintiffs the information they requested. Defendants assert that there are no facts alleged that show bad faith on defendants' part, nor can plaintiffs show how they have been prejudiced. Plaintiffs respond that they have alleged enough to show that Becker improperly withheld relevant documents from them, and that he has a history of mischaracterizing and misrepresenting documents.

This claim is dismissed. In their response to defendants' motion, plaintiffs note that some of the documents submitted by defendants in support of defendants' motion to dismiss were not previously provided to plaintiffs, but plaintiffs "do not contend that any of these documents govern their medical and dental benefits ... ." Dkt. #24-8 at 24. In addition, while plaintiffs make sweeping allegations about Becker's "pattern and practice of mischaracterizing and misrepresenting documents," those allegations fail to show a violation here.

Plaintiffs raise several disputes concerning various details of the documents provided, but their allegations do not show that defendants deliberately refused to supply them with the types of

28

documents plaintiffs had requested.  To some extent, plaintiffs' dissatisfaction with the documents they were provided seems to stem from their insistence that defendants created a separate plan governing plaintiffs' early retirement benefits.  As stated above, there are issues of fact surrounding whether the ERP amounted to a "plan" under ERISA, but there does not appear to be any formal plan document setting up such a plan.  It is hardly surprising, then, that defendants did not provide plaintiffs with "plan documents" concerning such an alleged plan.

In addition, I see no indication of bad faith here on defendants' part, or any prejudice to plaintiffs stemming from any delay in defendants' provision of particular documents.  Unlike *Pagovich v. Moskowitz*, 865 F.Supp. 130 (S.D.N.Y. 1994), upon which plaintiffs rely, this case does not involve an unexplained series of unanswered requests for documents, *see id.* at 138.  Plaintiffs have not alleged facts showing that defendants deliberately withheld any particular documents, nor have they shown how any delay in defendants' production of documents has prejudiced them. Defendants' motion to dismiss the fourth cause of action is therefore granted.

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. #6) is granted in part and denied in part. Plaintiffs' first and second causes of action are dismissed as to defendant Xerox Corporation. Plaintiffs' third cause of action is dismissed, to the extent that it asserts a claim for promissory

estoppel under state law.  Plaintiffs' fourth cause of action is dismissed in its entirety.  In all other

respects, defendants' motion is denied.

IT IS SO ORDERED.

_____

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 2, 2014.