UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

GEORGE BELL, JEAN BELL, ADALBERT LUX,
BRIGITTA LUX, CHARLES VAN NEIL,
JEANNETTE VAN NEIL, PATSY PUGLIESE,
ALICE PUGLIESE, GERALD SMART,
DOROTHY SMART, HERBERT OELKERS,
RICHARD MORRILL, RUTH MORRILL,
BLAIR HENDERSHOT, and JOAN HENDERSHOT,

                                   Plaintiffs,

v.                                                                Case No. 13-CV-6586(DGL)(MWP)

XEROX CORPORATION,
XEROX PLAN ADMINISTRATOR COMMITTEE,
LAWRENCE M. BECKER, XEROX MEDICAL
PLAN, XEROX DENTAL CARE PLAN, and
XEROX CORPORATION 1986 ENHANCED
EARLY RETIREMENT PROGRAM,

                                   Defendants.

———————————————————————

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL
COMPLIANCE WITH SETTLEMENT AGREEMENT**

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**

David R. Pfalzgraf, Jr.
Anne K. Bowling
424 Main Street
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
bowling@ruppbaase.com
pfalzgraf@ruppbase.com

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................. 2

HISTORY OF NEGOTIATIONS OF ............................................................................... 5

SETTLEMENT AGREEMENT AND REQUIRED LETTERS ..................................... 5

STANDARD ...................................................................................................................... 13

ARGUMENT ..................................................................................................................... 14

    I.  The Settlement Agreement Placed on the Record on November 17, 2017 is
       Enforceable. ........................................................................................................... 15

    II.  Now, Ten Months After the Settlement Agreement was Entered, the Defendants Are
        Attempting to Change the Material Terms of Settlement. ................................. 17

    III. The Defendants Have Transmitted Executed Letters that the Plaintiffs Have Accepted and
        No Further Letters Are Required. ..................................................................... 20

    IV. The Defendants Must Be Compelled to Produce the SPD that Defendants Have
        Confirmed the Claims Administrators for the Old Plan Rely on in Administering the
        Claim. ................................................................................................................... 22

    V. The Settlement Sum Should be Placed in an Interest Bearing Escrow Account. .............. 23

CONCLUSION .................................................................................................................. 25

Plaintiffs respectfully request that this Court issue an order granting the plaintiffs' motion to compel defendants' compliance with the settlement agreement that was placed on the record in open court on November 17, 2017.[1]  Specifically, plaintiffs' request that this Court order the defendants (1) to produce the summary plan description required as a term of settlement and (2) upon production of the summary plan description required as a term of settlement, to execute the settlement agreement.  The plaintiffs also request that this Court find that the letters, receipt of which is a material term of the agreement, transmitted by the defendants to the plaintiffs and accepted by the plaintiffs satisfy the settlement terms and need not be amended.  Finally, the plaintiffs request an order that the settlement sum be placed in an escrow account to ensure compliance with the agreement and protect the plaintiffs' rights to these funds and that the court award plaintiffs reasonable attorneys' fees and costs incurred in filing this motion.[2]  The plaintiffs respectfully request that, given the length of time since the settlement was reached and the continued delay by the defendants, that this Court enter such an order on or before November 2, 2018.

---

[1] This Court has jurisdiction to hear this motion to compel.  *See Garibaldi v. Anixter, Inc.*, 533 F. Supp. 2d 308 (W.D.N.Y. 2008); *Cole-Hoover v. New York Dept. of Correctional Servs.*, No. 02-CV-00826, 2013 WL 5652751 (W.D.N.Y. Oct. 16, 2013).  The settlement terms were placed on the record before this Court on November 17, 2017.  At that time, it was contemplated that the matter would not be dismissed until a settlement agreement was signed.  That agreement is not yet signed and no stipulation of dismissal has been filed.  Even if this matter had been dismissed, the parties contemplated that this Court would retain jurisdiction to enforce the settlement agreement.  *See* Agreement at Exhibit A (proposed stipulation of discontinuance) (Exhibit B). *Cf. Wynn v. Wegmans Food Markets*, No. 96-CV-6307L, 2007 WL 2994227 (W.D.N.Y. Oct. 11, 2007) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

[2] Should the Court be inclined to grant the plaintiffs' request for fees, the plaintiffs will submit evidence substantiating their fees incurred in litigating this motion.

## BACKGROUND

In 1986, Defendant Xerox Corporation ("Xerox"), in an effort to reduce costs, offered numerous employees the opportunity to retire early in exchange for an enhanced benefits package, including lifetime coverage under the Xerox Medical Plan for Retired Employees and Xerox Dental Plan for the employee and his spouse ("1986 Enhanced Retirement Program" or "1986 ERP").  In exchange, 1986 ERP participants forwent future salaries and advancements that could have increased their pensions and Social Security calculations.  Eight of the plaintiffs were among the approximate 1,000 employees nationwide to accept the offer.  The remaining seven of the plaintiffs are spouses who were also entitled to lifetime coverage under the Xerox Medical Plan for Retired Employees and Xerox Dental Plan.

In 2008, the defendants first notified the plaintiffs of a Summary of Material Modification in which the defendants asserted certain rights regarding a plan they termed "Old Plan" that the defendants maintain apply to the plaintiffs.  Through the course of numerous correspondence and appeals to the defendant plan administrators, the plaintiffs sought to protect the welfare benefits promised to them in 1986 and to seek clarification that the reservation of rights clause does not apply to them.  When the administrative process failed, the plaintiffs commenced this matter on October 25, 2013.  In their complaint, Plaintiffs sought (1) clarification and confirmation (a) that their medical and dental benefits vested and thus are not subject to any reservation of rights language and (b) that their benefits cannot be amended, suspended, or terminated and that their annual out-of-pocket maximum is calculated on a family and not individual basis and (2) an order estopping the defendants from attempting to incorporate a reservation of rights clause into the terms governing the provision of their medical and dental benefits and from increasing their out-of-pocket maximum.  *See* ECF No. 1.

The parties attempted to reach mutually agreeable settlement terms on numerous occasions from 2014 through 2017. These efforts were finally successful during a Court-ordered mediation on November 17, 2017. As a result of that mediation, the parties agreed to the following settlement terms, which were placed on the record before this Court.

- The defendants will pay a final settlement sum of $255,000 to the plaintiffs;
- "Xerox will send one letter from the vice-president saying that there is no present intention to change the plan.
- "And another letter from Will [Cone], who is the plan administrator . . . that will state what plan the plaintiffs are covered under and provide the SPD and confirm that that SPD is provided to the various claims administrators, such as Anthem and MVP[,] who administer the plans that the plaintiffs are under."
- The plaintiffs will dismiss the case and release "any claims they have in this litigation."

*See* Exhibit A, Hr'g Tr. at 3-5 (November 17, 2017). The parties agreed that the above-mentioned terms were material terms of the agreement. *Id*. at 5. Over the course of the next ten months, the parties finalized the settlement agreement ("the Agreement") itself. *See* Exhibit B.

To date, however, the defendants have yet to provide the plaintiffs with the SPD that is provided to the various claims administrators of the Old Plan, including Anthem and MVP. *See* Hr'g Tr. at 3-5 (Exhibit A); Agreement at § 1.2 (Exhibit B). Section 1.2 of the Agreement states that:

> Prior to the execution of the Settlement Agreement, Defendant Plan Administrator Committee, through its Chair, the Director of Global Benefits, will provide a letter that will identify what medical and dental plan the Plaintiffs' benefits are administered under and provide to Plaintiffs a copy of the Summary Plan Description ("SPD") for those plans and further confirm that the SPD provided to them is the same SPD provided to the claims administrators, such as Anthem and MVP, who administer their medical and dental claims.

As stated above, the parties have agreed to this term of settlement on November 17, 2017 and to language in the Agreement, including Section 1.2. On October 12, 2018, nearly 11 months after the settlement terms were reached, the defendants stated that they had confirmed with Anthem –

one of the claims administrators – that it relied on the SPD.  To date, it is unknown whether the defendants confirmed this information with the other claims administrators.

On August 1, 2018, the defendants provided letters pursuant to Sections 1.1 and 1.2 of the Agreement that they have maintained comply with the terms of settlement.  Section 1.1 of the Agreement provides that the defendants will transmit to the plaintiffs a letter stating that Xerox has no present intention to the change the plaintiffs' medical and dental benefits. Although the plaintiffs originally rejected the letter provided pursuant to Section 1.1 on August 1, 2018 because it contained different language than agreed to on November 17, 2017 , on October 8, 2018, the plaintiffs subsequently informed the defendants that they would accept this letter as a means to expedite completion of the settlement process and their receipt of the settlement sum.  The plaintiffs have agreed four times to accept the letter provided August 1, 2018 pursuant to Section 1.2 of the Agreement upon receipt of the yet to be received SPD.

Now, however, the defendants have taken the position that (1) the letters contemplated as material terms at the time of settlement and in the Agreement are not material, (2) that the defendants can change the language of the letters at will regardless of whether the language complies with the settlement terms or is acceptable to the plaintiffs, (3) that the plaintiffs cannot accept as final letters defendants provided to plaintiffs on August 1, 2018 and which plaintiffs have stated comply with the settlement terms, and (4) that the defendants need only provide the SPD provided to one – but not all – of the claims administrators of the Old Plan. The defendants have also refused to comply with the plaintiffs' request that the settlement sum be placed into an interest bearing escrow account pending resolution of these issues.

The plaintiffs are ready and willing to sign the Agreement upon receipt of the necessary letters and the required SPD.  To effectuate the agreement between the parties, the

plaintiffs now respectfully request that the Court enter an order compelling the Defendants to comply with the terms of settlement and specifically to (1) agree that the letters provided on August 1, 2018 are final letters required pursuant to the settlement terms, (2) provide the necessary SPD after confirming that it is relied upon by the claims administrators for the Old Plan in administering the Old Plan,  (3) upon provision of the SPD and the plaintiffs' signing of the Agreement, execute the Agreement in a timely manner, (4) place the settlement sum in an interest-bearing escrow account pending resolution of this matter to protect the plaintiffs' right to the funds, and (5) pay the plaintiffs' reasonable fees and costs in litigating hits motion.

### HISTORY OF NEGOTIATIONS OF
### SETTLEMENT AGREEMENT AND REQUIRED LETTERS

Following the November 17, 2017 mediation and proceeding, the defendants requested that they have the opportunity to write the first draft of the settlement agreement.  The defendants transmitted this draft to the plaintiffs on December 21, 2017 and transmitted drafts of the letters that were terms of settlement on January 16, 2018.  Both letters were dated January 2018.  *See* Exhibit C. The initial draft of the agreement contained the defendants' version of the facts underlying this dispute, an assertion that the defendants' reserved their rights to change the plaintiffs' benefits, a blanket nondisparagement clause that applied to the plaintiffs but not to the defendants, clauses that imposed significant penalties on the plaintiffs for noncompliance but no penalties on the defendants, and a broad general release.

This draft was not acceptable to the plaintiffs in that it was entirely one-sided and benefitted the defendants while including penalties for the plaintiffs.  Therefore, as a party to the agreement and with the right to ensure that the agreement was mutual, the plaintiffs made certain changes, including a liquidated damages clause that applied to the defendants, the plaintiffs'

version of the facts underlying the dispute, and a narrowed release to apply to only the

allegations brought in this action. All of these changes were made in good faith and transmitted

to the defendants on January 24, 2018 – eight days after the plaintiffs received the draft letters.

Subsequently, defense counsel informed plaintiffs' counsel that the defendants

would not accept certain terms in the agreement. The plaintiffs agreed to remove those terms

that were specifically identified and transmitted a revised draft on February 2, 2018.

As it was apparent that the parties had different recollections of the terms of

settlement placed on the record on November 17, 2017, the defendants redrafted the agreement

purportedly to track the terms of the agreement placed on the record. The defendants transmitted

this draft to the plaintiffs on March 16, 2018. Two weeks later, on March 30, 2018, the

defendants provided to the plaintiffs revised, unsigned draft letters dated March 2018 to

correspond with the terms of the settlement placed on the record. *See* Exhibit D.

After reviewing the revised draft agreement and the transcript, the plaintiffs made

limited modifications to ensure that the language in the agreement did, in fact, track the

transcript. These changes included narrowing the release to apply only to claims related to the

allegations set forth in the complaint in this matter. The plaintiffs transmitted a revised

settlement agreement to the defendants on April 6, 2018 – one week after receiving the revised

letters. The plaintiffs agreed to accept the two draft letters dated March 2018 provided that the

language was modified tracked the language in the transcript.

The plaintiffs also requested that, out of an abundance of caution given the

confidentiality provision, language be added that would not prevent any plaintiff from serving on

an ERISA advisory board as long as the lawsuit itself was not discussed. Such a limited request

6

did not impact the material terms of the agreement.  When the defendants stated that they would not agree to this clause, the plaintiffs removed it without debate.

One benefit guaranteed to the plaintiffs under the Old Plan is full reimbursement for the amount that is deducted from their Social Security payment to pay for their Medicare Part B coverage.  From time to time, the federal government increases the Medicare Part B deduction and publicizes this information.  One such increase occurred in 2017.  However, Xerox did not increase the plaintiffs' reimbursement to correspond to Old Plan beneficiaries' increased Social Security deduction.  In other words, Xerox reimbursed the plaintiffs for the amount they contributed to Medicare in 2016 – not the amount contributed in 2017.  Therefore, the plaintiffs were working through Xerox's administrative processes to address this issue.  However, the plaintiffs also heard from someone internal at Xerox that Xerox was aware of the issue and did not intend to correct it unless individual beneficiaries complained.  The  plaintiffs were concerned that the defendants were changing their level of benefits, and in April 2018, requested that the issue be resolved prior to the Agreement being finalized.  *See* Exhibit E.  In response, the defendants agreed to write a letter stating the failure to increase reimbursements was inadvertent and that the problem was being addressed.

On May 31, 2018, forty-five days after the plaintiffs submitted proposed revisions to the settlement agreement and letters and numerous emails from counsel to ascertain the status of the revisions and letters (*see* Exhibit F), the defendants transmitted a revised agreement that once again broadened the release and changed the plaintiffs' stated reason for settling this matter. After conversations between counsel, in June 2018, the parties exchanged revised draft agreements that ultimately narrowed the release, reflected that the plaintiffs' reasons for settling were different than the defendants, and acknowledged that both parties understood that the terms

7

of Section 1 of the agreement, discussing the letters to be provided, and Section 7 of the

agreement, regarding confidentiality and non-disparagement, were material provisions of the

agreement.  As a result this final change, Section 8 of the Agreement, states that "actions

between the date that the parties entered their agreement on the Court's record, November 17,

2017, and the date that this Agreement is fully-executed ("Interim Period") would be a violation

of this agreement."  *See* Agreement at § 8.

        Again, despite repeated requests for updates from counsel, weeks went by without

a response on the revised draft from the defendants or receipt of final signed letters.

*See* Exhibits G and H.

        On August 1, 2018, the defendants transmitted a revised settlement agreement and

two signed letters.  *See* Exhibit I.  With regard to the agreement, over the course of the preceding

45 days, the defendants had made three changes – two of which were acceptable to the plaintiffs

– and one of which was not.  As stated above, in January 2018, the parties originally placed their

factual contentions and legal positions in the agreement.  They subsequently agreed to remove

both parties' versions of the facts, allegations, and defenses.  Thereafter, from March 2018 to

August 2018, no iteration of the agreement included the parties' litigation positions.  Yet now,

five months later, the defendants were again trying to insert language to the effect that the

defendants' maintained that they had the right to change the plaintiffs' benefits.  The plaintiffs'

objected to the inclusion of this language and explained that Section 6 of the Agreement already

contained statements that the defendants were not admitting liability and that the plaintiffs were

not conceding that their claims lacked merit.  The plaintiffs also explained our reason for asking

that the signature page for the Defendants Medical Care Plan, Dental Care Plan, and 1986 Early

Retirement Plan be changed to remove argumentative language.  *See* Exhibit J.

With regard to the letters sent on August 1, 2018, the letter from the Director of Global Benefits pursuant to Section 1.2 of the Agreement was dated August 1, 2018, and the letter from the Vice President, Global Total Rewards, pursuant to Section 1.1 of the Agreement, was dated July 18, 2018.  Both letters were signed.  *See* Exhibit I.  The August 1, 2018 letter from the Director of Global Benefits did not include the required SPD.

In the letter from the Vice President, Global Total Rewards, the defendants deleted the language that Xerox had no current intention to change the level of benefits in the Old Plan.  Instead, the letter stated that Xerox "plans to continue the level of benefits provided under the Old Plan."  The plaintiffs objected to this change as a revision to the terms of settlement and requested a letter that tracked the language agreed to on November 17, 2017 and contained in the  Agreement.  The plaintiffs also requested the letter addressing the issue related to the Medicare Part B issue and expressed concern that they could not verify whether Xerox truly planned to continue the level of benefits under the Old Plan when it appeared that Xerox was reducing the required reimbursement of the plaintiffs' Medicare Part B payments.  *See* Exhibit J.  On August 6, 2018, the defendants stated that they had identified the individual who needed to write a letter explaining the Medicare Part B issue and would send the letter when that individual returned from vacation.

On August 9, 2018, the defendants transmitted a revised settlement agreement that addressed the plaintiffs concerns regarding the inclusion of the defendants' litigation position.  In response, defense counsel informed plaintiffs' counsel that counsel was "awaiting the revised letter from the VP to forward to" the plaintiffs.  *See* Exhibit K.  At this point, the plaintiffs understood that the settlement agreement was finalized and ready to be signed upon receipt of the letters and the required SPD.

Weeks passed without the updated letters promised on August 6 and 9, 2018 and without explanation from the defendants regarding the delay.  *See* Exhibit L.  After a phone conversation between counsel, on August 22, plaintiffs' counsel provided defense counsel with more information on the Medicare Part B reimbursement issue.  *See* Exhibit M.  Again weeks went by.  Then, on September 6, 2018, defense counsel informed plaintiffs' counsel by phone that the defendants could not provide a letter dated in or around August 2018 stating that there was no present intention to change the Old Plan because the current Xerox board of directors was reviewing all expenses.  Therefore, Xerox was not comfortable making the statements stating that there was no present intention to change the Plan.

On September 14, 2018, the plaintiffs stated that the defendants were attempting to change material terms of the agreement and demanded compliance with the agreement placed on the record on November 17.  *See* Exhibit N.   In response, the defendants transmitted a letter dated September 17, 2018 in which the defendants took the position that the letters placed on the record as material terms and noted as such in Section 8 of the Agreement were not material terms.  According to the defendants, the only material terms were payment of the settlement sum and release of the claims.  *See* Exhibit O.  The defendants ignore the fact that the plaintiffs would not have settled but for the promised receipt of the letters containing the agreed upon language and the required SPD and the fact that all parties had been acting as if these letters were material terms required to be sent before the Agreement could be signed.

On September 18, 2018, plaintiffs' counsel called defense counsel in response to the September 17 letter.  In an attempt to reach a mutually beneficial agreement on the letters in an expedient fashion, the plaintiffs proposed that the defendants sign the draft letter dated March 2018 and accepted by the plaintiffs with limited modifications in April 2018.  In that same

conversation, plaintiffs' counsel inquired whether the defendants intended to transmit a revised letter signed by the Director of Global Benefits as the individual who signed the August 1, 2018 letter was no longer employed at Xerox.  Defense counsel stated that there was no need for a revised letter.  The plaintiffs, therefore, agreed to accept the August 1, 2018 letter and requested that receipt of the SPD referenced in the letter as the defendants had yet to transmit the document to the plaintiffs over the past ten months of negotiations.

One week later, on September 25, 2018,  the plaintiffs emailed the defendants a copy of the Agreement and asked for confirmation that the Agreement was final and ready to be signed.  The plaintiffs also informed the defendants that they were ready to sign the agreement upon receipt of the SPD and the letter contemplated in Section 1.1 of the Agreement.  The plaintiffs' reiterated their proposal that the defendants' sign the draft letter from March 2018 or, alternatively, a letter dated June 2018 before the new board of directors took over at Xerox. *See* Exhibit P.

In response, the defendants rejected the proposal to sign the draft letter dated March or June 2018 and continued to assert that the letters were not material terms of the agreement.  *See* Exhibit Q.  The plaintiffs responded with an explanation of why the letters were material and how the parties' actions showed that all parties understood that the letters were material and would be dated contemporaneously with the signing of the settlement agreement. The plaintiffs also agreed to forego the letter regarding the Medicare Part B issue in order to expedite completion of the agreement and receipt of the settlement sum.  *See* Exhibit R.

On October 3, 2018, the defendants responded by again rejecting the plaintiffs' proposal to sign letters dated March or June 2018.  In that letter, the defendants stated that they had previously provided letters that were in compliance with the terms of settlement and

reiterated its position that the letter pursuant to Section 1.1 would be restricted to November 17, 2017.  *See* Exhibit R.  On October 8, 2018, the plaintiffs stated that, given the defendants' position that the letters provided on August 1, 2018 complied with the terms of settlement, the immense delay in resolving this matter, and their interest in receiving the settlement sum and ending these negotiations, they were now willing to accept the July 18, 2018 letter signed by the Vice President, Global Rewards.  The plaintiffs also reiterated – for the fourth time – that they accepted the August 1, 2018 letter signed by the then-Director of Global Benefits and requested receipt of the required SPD (as previously stated and requested on September 18, 25, and 28, 2018).  *See* Exhibit T.

On October 12, 2018, the defendants were still not prepared to send the required SPD.  The defendants had only recently reached out to one of the claims administrators to confirm that the SPD was the document it relied on in administering claims, and there had been a delay in receiving confirmation.  Plaintiffs' counsel confirmed that the plaintiffs were now only waiting for the SPD and updated signature pages to reflect personnel changes at Xerox.  Counsel further confirmed that there was no need for a revised letter pursuant to Section 1.1 of the Agreement to be drafted as the plaintiffs agreed to accept the July 18, 2018 executed letter.  At no time during this conversation, did defense counsel state that the plaintiffs could not accept the July 18, 2018 letter.  Nor did defense counsel state that the defendants were revising the letter pursuant to Section 1.2 that the plaintiffs had already accepted three times. As a follow up to the conversation and in recognition of the immense delays on the part of the defendants in responding in drafts and issuing documents, the plaintiffs' requested that the settlement sum be placed in an interest bearing escrow account pending resolution of this matter and requested that the SPD be sent by October 17, 2018.  *See* Exhibit U.

In response, the defendants' once again changed their position from just three days prior, and stated that they were now rewriting both letters.  The defendants have taken the position that by requesting a letter signed by someone with authority to state which SPD was provided to plaintiffs and then, after further discussions with counsel four days later, agreeing to accept the August 1, 2018 signed letter upon receipt of the SPD, the plaintiffs forewent the ability to accept this letter.  *See* Exhibit V.  Of note, the defendants did not take this position until one month after the defendants accepted the letter, and in fact appeared to have had no intention to draft a revised letter pursuant to Section 1.2 of the agreement until October 17, 2018.  The defendants have also taken the position that it is too late for the plaintiffs to accept the signed July 16, 2018 letter despite the fact that as late as October 3, 2018, the defendants maintained that this letter complied with the terms of settlement.  *Id*.

## STANDARD

Courts in this Circuit have stated that "[s]ettlement agreements to end litigation are strongly favored by courts and are not lightly cast aside."  *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006) (citing *Willgerodt, on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y.1997)).  An oral settlement agreement is enforceable provided "that the parties assent to the terms and conditions of the settlement, and . . . that the parties intend to be bound by it."  *Id*. (quoting *N. Fork Country, LLC v. Baker Publ'ns, In*c., 436 F.Supp.2d 441, 445 (E.D.N.Y.2006)); *see also Garibaldi v. Anixter, Inc.*, 533 F. Supp. 2d 308, 310 (W.D.N.Y. 2008).  This court "has the power to enforce, summarily, on motion, a settlement agreement reached in a case . . . pending before it."  *Garibaldi*, 533 F. Supp. 2d at 310 (internal quotations omitted).

13

## **ARGUMENT**

To date, the defendants have not complied with all material terms of the settlement placed on the record on November 17, 2017 and have not delivered the SPD they are required to provide to the plaintiffs prior to execution of the Agreement.  They have, however, taken actions in reliance on the fact that settlement terms that benefit them, to wit dismissal of this action, are binding on the plaintiffs.  The plaintiffs are ready and willing to sign the Agreement upon confirmation that they may accept the letters provided by the defendants on August 1, 2018 and receipt of the required SPD.

Over the course of the past eleven months, there have been numerous instances in which more than a month has passed before the defendants will respond to emails and requests from the plaintiffs.  The defendants' only excuse is that the defendants were too busy to pay attention to this matter.  Now that internal changes have occurred at Xerox, the defendants have taken the positon that they can unilaterally decide material terms are no longer material and change the terms of settlement.  While the plaintiffs understand that internal issues at Xerox have necessitated certain changes and have tried to work with the defendants in reaching a mutually agreeable solution to address these changes, the defendants have refused to negotiate in good faith and have instead taken the position that they can dictate what the terms of settlement may be.  The plaintiffs entered a settlement agreement with Xerox as a corporate entity – not the board of directors or any individual in leadership.  Changes within the leadership at Xerox thus do not absolve the corporate entity from uploading his side of the settlement agreement. Therefore, the plaintiffs are now requesting that the Court intervene and require compliance with the settlement agreement as agreed to by the parties.

**I.      The Settlement Agreement Placed on the Record on November 17, 2017 is Enforceable.**

On November 17, 2017, the parties entered a settlement agreement, placed the material terms on the record, and intended to be bound thereby.  Therefore, the agreement, including the recognition of the receipt of the letters contemplated in Section 1 of the Agreement, are enforceable.  To determine whether an oral agreement is binding, courts "consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  All factors here indicate that the parties intended to be bound by the settlement.

Although the parties stated on November 17 that all terms of the agreement would be reduced to a written settlement agreement, they did not state that the agreement would not be binding until the written agreement was signed.  *See* Hr'g Tr. at 5 (Exhibit A); *see also Wynn*, 2007 WL 2994227 at *4.

Thereafter, the parties acted as if the agreement was binding.  For seven months, the parties exchanged versions of a settlement agreement that tracked the language used before the Court on November 17, 2017 and eventually reached a mutually agreeable settlement agreement.  In that Agreement., the parties agreed to language in Section 1.1 and 1.2 of this agreement that tracked the language put on the record on November 17, 2017.  *Compare* Hr'g Tr. (Exhibit A) *with* Agreement (Exhibit B).

To date, there has been partial performance of the contract and the defendants have taken actions as if the contract as binding on the plaintiffs.  The plaintiffs have received and

accepted two letters that the defendants contend comply with the settlement agreement. *See* Exhibit T.  At this time, the only performance left is for the defendants to transmit the required SPD, for the parties to execute the agreement, for the settlement sum to be paid, and for the stipulation of discontinuance to be filed.

The defendants have also taken actions in reliance on the settlement being binding at least on the plaintiffs.  The defendants have stated on numerous occasions that by agreeing to the settlement, the plaintiffs released their claims notwithstanding the fact that no stipulation of discontinuance has been filed.  One claim advanced in this litigation is that the plaintiffs were entitled to lifetime, non-contributory medical and dental benefits.  From 1986 to 2018, Xerox has not imposed a contribution requirement on Old Plan beneficiaries.  However, on October 3, 2018, Xerox informed Old Plan beneficiaries, including the plaintiffs, that to remain an Old Plan participant, each participant must pay an annual contribution starting in 2019.  *See* Exhibit Y.  If the defendants did not understand the oral settlement agreement to be binding, then presumably they would not have taken an action that was contingent upon the plaintiffs' release of their claims. It is not equitable or just that the terms that the defendants consider the terms that benefit them to be binding while the terms material the plaintiffs are immaterial and can be changed at will.

Third, there were no additional material terms to be agreed upon.  On November 17, the parties confirmed that all material terms had been placed on the record and subsequently agreed to language in the Agreement that tracked the terms of settlement.  The parties' course of dealing from November 2017 to August 2018 evidenced that they agreed that the material terms of settlement included transmittal of the two letters, the signing of the Agreement containing a release, the dismissal of the complaint, and the payment of the settlement sum.  *See* Exhibits A,

B, C, D, K.  Although the defendants changed their purported understanding of the material

terms in September (*see* Exhibit O), their behavior prior to the point evidenced that all material

terms were agreed upon and finalized.

Fourth, although settlement agreements are often written, courts have routinely

held that oral settlement agreements are enforceable. *See, e.g.*, *Garibaldi*, 533 F. Supp. 2d at 310.

Therefore, all four *Winston* factors are met here, and the oral settlement is

enforceable.

## II. Now, Ten Months After the Settlement Agreement was Entered, the Defendants Are Attempting to Change the Material Terms of Settlement.

There is no dispute regarding the agreed upon settlement sum or the release

currently contained in the Agreement.  Until August 2018, there was also no dispute regarding

the provision of the letters required by the terms of settlement.  As stated above, the terms

included that the defendants would send the plaintiffs two letters: one from the Vice President,

Global Rewards stating that Xerox had no current intention to change the plaintiffs' plan and one

from the Director of Global Benefits stating which plans the plaintiffs' medical and dental

benefits were administered under, providing the plaintiffs with the SPD Xerox provided to

various claims administrators of the Old Plan, including Anthem and MVP, and confirming that

the claims administrators relied on this SPD in administering the claims.

The transcript of the proceedings states that the material terms included that

> Xerox **will send one letter** from the vice-president saying that there is no present intention to change the plan and **another letter** from Will [Cone], who is the plan administrator, and that will state what plan the plaintiffs **are covered** under and provide the SPD and confirm that that SPD is provided to the various claims administrators, such as Anthem and MVP, who administer the plans.

Hr'g Tr. at 3-4 (Exhibit A).  This material term states that Xerox **will** (in the future) send **letters**, not that Xerox would make statements frozen in time as of November 17, 2017.  Receipt of the letters, therefore, is a material term to this agreement.

These terms were embodied in Section 1 of the agreed upon draft of the settlement agreement, which states as follows:

> 1.1     Prior to the execution of the Settlement Agreement, Defendants will provide one letter signed by the Vice President of Benefits for Xerox stating that there is no present intention to change the Old Plan for the above-named Plaintiffs.
>
> 1.2     Prior to the execution of the Settlement Agreement, Defendant Plan Administrator Committee, through its Chair, the Director of Global Benefits, will provide a letter that will identify what medical and dental plan the Plaintiffs' benefits are administered under and provide to Plaintiffs a copy of the Summary Plan Description ("SPD") for those plans and further confirm that the SPD provided to them is the same SPD provided to the claims administrators, such as Anthem and MVP, who administer their medical and dental claims.

Agreement at § 1 (Exhibit B).

From November 2017 to August 2018, both parties ostensibly understood the language that would be contained in the letters and that these letters would be dated contemporaneously with the signing of the Agreement.  In January 2018, the defendants transmitted draft letters dated January 2018 that purported to comply with these settlement terms. *See* Exhibit C.  After reviewing the transcript, in March 2018, the defendants transmitted letters dated March 2018 that more closely tracked the agreed upon settlement terms. *See* Exhibit D.

In August 2018, the defendants transmitted two new letters – a letter pursuant to Section 1.1 dated July 18, 2018 and a letter pursuant to Section 1.2 dated August 1, 2018.  Both letters were signed. *See* Exhibit I.  While the July 18, 2018 letter changed the language required by the settlement terms, as of August 1, 2018, the defendants clearly understood that the intention was that the letters would be dated contemporaneously with the signing of the

Agreement.  On August 6 and 9, the defendants stated that they were in process of rewriting the letter July 18, 2018 to reflect the settlement terms.  *See* Exhibit K.

Then, in September 2018, the defendants changed their position and insisted that receipt of the letters is not a material term of the settlement agreement and that the letters need only state Xerox's intentions as of November 17, 2017.  *See* Exhibit O.  On October 16, 2018, after the plaintiffs accepted the August 1, 2018 orally and in writing four times, the defendants changed their position again and stated that they only intended to provide the SPD transmitted to Anthem.  *See* Exhibits V; *see also* Exhibit X.  The defendants do not state what SPD they provide to other claims administrators or why they no longer need provide this document despite the fact that the November 17, 2017 record clearly states that the defendants would provide the SPD sent to claims administrators, such as Anthem **and MVP .**

The defendants' current position regarding the materiality and language required in the letters is belied by the record and the defendants' actions between November 2017 and September 2018.  It is also worth noting that, if these letters were not material, then negotiations over their contents would not be such a sticking point in this process.

To now state that the letters are not material and that the parties only ever agreed that the letter pursuant to Section 1.1 would state Xerox's intention as of November 17, 2017 is disingenuous and has only served to prolong the time it is taking to finalize the agreement.  What is more, the defendants changed position as of October 2018 to state that the Agreement only requires them to provide the SPD provided to Anthem and not to other claims administrators (Exhibits V and X) is in direct contradiction to the hearing transcript (Exhibit A), the Agreement (Exhibit B), and the signed August 1, 2018 letter (Exhibit I), and is made without explanation for the sudden change.

Based on the history of these proceedings, the parties intended to be bound by the settlement agreement, the parties had a mutual understanding as to the terms of settlement from November 2017 to September 2018, and the settlement must be enforced.  The plaintiffs respectfully request an order that the plaintiffs rightfully accepted the letters provided by the defendants on August 1, 2018 and that the defendants must provide a SPD that the defendants confirm that all Old Plan claims administrators rely on in administering the Old Plan.

### III.   The Defendants Have Transmitted Executed Letters that the Plaintiffs Have Accepted and No Further Letters Are Required.

The defendants have also taken the position that the plaintiffs are barred from accepting the executed letters the defendants transmitted on August 1, 2018.  This position is solely an opportunity for the defendants to continue to delay the execution of the Agreement, delay the payment of the settlement sum, and attempt to once again attempt to unilaterally change the material terms of settlement.

As noted above, on August 3, 2018, the plaintiffs initially rejected the July 18, 2018 letter executed by the Vice President, Global Rewards because the language was different from the language agreed upon on November 17 and embodied in the Agreement.  *See* Exhibit J. After attempts to reach a mutually agreeable solution on the letter, including a proposal that Xerox sign draft letters agreed to in April 2018, and given the defendants' continued position that the July 18, 2018 letter complied with the settlement agreement (*see* Exhibit S), on October 8, 2018, the plaintiffs agreed to accept this letter.  *See* Exhibit T.

Regarding the letter pursuant to Section 1.2 of the Agreement to be signed by the Director of Global Benefits, the defendants brush over the fact that after discussions between counsel on September 18, 2018, the plaintiffs agreed to accept the August 1, 2018 letter signed

by William Cone upon receipt of the required SPD and confirmed this agreement in writing three times. *See also* Exhibits P, R, T, U.  The defendants also ignore the fact that as of October 12, 2018, they appeared to be in the process of assembling the required SPD but not rewriting the letter.  The defendants cannot now retract a letter that was long ago accepted so that they have the opportunity to rewrite the letter, delay the process, and change the terms of settlement.

It is unclear at this time why the defendants are insistent that the plaintiffs cannot accept these letters.  On October 3, 2018, the defendants stated that these letters complied with the settlement agreement.  *See* Exhibit S.  On October 8, 2018, the plaintiffs agreed to accept these letters.  *See* Exhibit T.  On October 12,2018, during a phone call plaintiffs' counsel reiterated that the plaintiffs would accept these two letters, and defense counsel did not state that the plaintiffs could not accept the letters.  Such a position was not taken until October 16 and 18, 2018 and is again a change in defendants' position that is not supported by the settlement terms. *See* Exhibits V and X.

The plaintiffs are concerned that the defendants are rewriting these letters with language not contemplated in the settlement terms and not in line with the parties' understanding that the letters would be dated contemporaneously with the signing of the Agreement.  Receipt of the letters was a material term to the plaintiffs, and they would not have settled but for the promised transmission of the letters.  The plaintiffs are, therefore, asking this Court to intervene and order that the plaintiffs may accept the previously issued letters as written without need for further changes.

**IV.** **The Defendants Must Be Compelled to Produce the SPD that Defendants Have Confirmed the Claims Administrators for the Old Plan Rely on in Administering the Claim.**

The terms of settlement were reached on November 17, 2017. It is inexplicable that the defendants have not furnished the required SPD when there is only one Old Medical Plan for Retired Employees and one Old Dental Plan under which the plaintiffs have received benefits since retiring in 1986. It is also inexplicable that the defendants did not even attempt to confirm with the claims administrators that they relied on this SPD until weeks ago. The plaintiffs' benefits are administered under the Old Plan. Xerox offers Old Plan beneficiaries various options under which they can receive Old Plan benefits. Each option is administered by a different claims administrator. Two of these administrators are Anthem and MVP. Anthem is the claims administrator for Xerox's self-funded version of the Old Plan. MVP is the claims administrator for one of the Medicare Advantage versions of the Old Plan offered to Old Plan participants.

The settlement terms and the Agreement require the defendants to provide the SPD sent to each of these claims administrators and to confirm that the claims administrators rely on the SPD in administering the claim. The purpose of this settlement term was to allow the plaintiffs to work directly with the claims administrators to resolve disputes over their benefits. The plaintiffs agreed to release their claims in this action. In exchange, the defendants offered a settlement sum and the two letters, including provision of the exact SPD relied on by Old Plan claims administrators so that the plaintiffs could solve their own disputes regarding benefits instead of involving the plan administrators. For the defendants to now act as if this action were already dismissed (*see* Exhibit Y) but to refuse to deliver the letters as offered, is tantamount to bait and switch and deprives the plaintiffs of the benefit of the bargain.

The defendants should already know – and should have known for the past eleven months – how they inform third-party claims administrators of benefits offered under the Old Plan and how they monitor these claims administrators' compliance with the plan.  Even if it did make sense that the defendants had to confirm with the claims administrators what benefits those third-parties administrator – and it does not – the defendants have had 11 months to confirm that the SPD is relied upon by the various claims administrators.  They inexplicably failed to do so until this past month.  What is more, at this point, it is unclear whether the defendants confirmed this information with all claims administrators or only with Anthem.  If, for any reason, other claims administrators do not rely on the SPD in administering the claim, then the defendants should be required to state as much and explain what document those claims administrators rely on.  Changing the language of the letters to attempt to conceal this information is not an adequate substitute and would not be an action taken in good faith.

Therefore, the plaintiffs request that this Court order the defendants to produce the SPD, confirm it is relied upon by the claims administrators, and, if that is impossible, then to explain what document or instrument is relied on by the claims administrators in evaluating Old Plan beneficiaries' claims.

## V.    The Settlement Sum Should be Placed in an Interest Bearing Escrow Account.

There is no dispute that eleven months have passed since the settlement terms were reached on November 17, 2017 and that the plaintiffs have yet to receive the settlement sum.

There can be no dispute that changes at Xerox have prolonged this settlement process. [3]  For example, the defendants allowed weeks and even months to go by before responding to plaintiffs' requests for revised draft letters despite numerous phone calls and emails from plaintiffs' counsel to ascertain the status of these letters.  *See* Exhibits F, G. H, L.

As the weeks and months ticked by, changes to the Xerox board of directors resulted in the defendants' position that they had to change the letter to be provided pursuant to Section 1.1 of the Agreement.  The plaintiffs attempted to negotiate an agreeable solution over the language of that letter, but the defendants have insisted on dictating terms instead of adhering to the negotiated agreement.  Now, the plaintiffs are again forced to wait while the defendants appear to be poised to unilaterally make changes to material terms of the agreement.

Simultaneously, Xerox continues to undergo numerous changes and, at this point, it is unclear whether further changes may affect Xerox's purported ability to enter this agreement and pay the settlement sum.

Therefore to protect the plaintiffs' interests, the defendants should be ordered to place the $255,000 settlement sum in an interest bearing escrow account so that the plaintiffs can be assured that they will receive the long awaited settlement sum upon completion of the Agreement.  *See Olin Corp. v. Lamorak Ins. Co.*, No. 84-cv-1698, 2018 WL 1901634 at *15 (S.D.N.Y. April 17, 2018); *Cole-Hoover*, No. 02-CV-00826, 2013 WL 5652751.

---

[3] In letters to counsel, the defendants have taken the position that the plaintiffs' statements that they needed an assurance before signing the Agreement that the reductions in their Medicare Part B reimbursements were a mistake and temporary, were what led to the delay in finalizing this settlement process.  The defendants, however, ignore the fact that they agreed to provide this letter and ostensibly were writing this letter up until September 2018.  The defendants also do not explain how the request to receive this letter delayed the defendants' transmission of the letters and the SPD required as material terms of settlement or caused the defendants' purported inability to respond to drafts for weeks on end.

## CONCLUSION

The plaintiffs have negotiated this Agreement in good faith and have attempted to resolve the differences with the defendants regarding the letters the defendants are required to provide.  However, given the defendants' failure to produce the required SPD, changing positions on the meaning of settlement terms 10 and 11 months after those terms were reached, and extreme delay in finalizing this Agreement, the plaintiffs are asking the Court for its assistance in resolving this matter and to enter an order (1) compelling the defendants to comply with the terms of settlement, (2) upon such compliance, compelling the defendants to execute the Agreement, (3) compelling defendants, in the interim, to place the settlement sum in an interest bearing escrow account, and (4) awarding plaintiffs' their reasonable attorneys' fees and costs incurred in litigating this motion.

Dated: October 22, 2018
      Buffalo, New York

           Respectfully submitted,

           **RUPP, BAASE, PFALZGRAF, CUNNINGHAM, LLC**
           *Attorneys for the Plaintiffs*

           By:     /s/ Anne K. Bowling
                    Anne K. Bowling
                    David R. Pfalzgraf, Jr.
                    424 Main Street
                    1600 Liberty Building
                    Buffalo, New York 14202
                    (716) 854-3400
                    bowling@ruppbaase.com
                    pfalzgraf@ruppbase.com